No. 83-177

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

FARMERS INSURANCE EXCHANGE,

Plaintiff and Respondent,

-vs-

MARK ALLEN CHRISTENSON, ROLAND J.
CHRISTENSON and KARENSE M.
CHRISTENSON,

Defendants and Appellants.

_____

APPEAL FROM: The District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Lloyd E. Hartford argued, Billings, Montana

For Respondents:

Crowley Law Firm; Ronald Lodders argued, Billings,
Montana

_____

Submitted: March 2, 1984

Decided: July 12, 1984

Filed: JUL 12 1984

*Ethel M. Harrison*
_____
Clerk

Hon. John C. Sheehy
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

August 9, 1984

Farmers Ins. Exchange v. Christenson, No. 83-177, July 12, 1984, dissenting

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

Page 14, line 2 from bottom - - (Section 33-33-201, MCA) should read (Section 33-23-201, MCA).

Page 17, line 14 from bottom - - (Wash.Rev.Code §48-22-303) should read (Wash.Rev.Code §48-22-030).

Page 21, line 12 from bottom - - Toole v. Paumie Persian Dye House should read Toole v. Paumie Perisian Dye House.

Page 21, line 11 from bottom - - (1935) should read (1938).

Page 22, line 3 from bottom - - 576 P.2d at 592 should read 576 P.2d at 492.

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order denying a motion to vacate a default judgment and stay of execution. The defendants sought to vacate a default judgment by claiming the judgment to be void. The District Court of the Thirteenth Judicial District, in and for the County of Yellowstone, denied the defendants' motion.

On June 6, 1981, defendant Mark A. Christenson apparently caused an accident by improperly operating a motor vehicle. Kristine N. Hinckley, a passenger in the vehicle, sustained injuries as a result of the accident. Both Christenson and Hinckley were minors at the time of the accident. Christenson had no insurance on the vehicle when the accident occurred.

Farmers Insurance Exchange (Farmers) insured Hinckley and paid $7,000 on her claim arising out of the injuries she sustained in the accident. Farmers paid this under an uninsured motorist provision in the Hinckley insurance policy. As required in the policy, the Hinckleys assigned their personal injury action to Farmers as part of a subrogation clause.

On February 10, 1982, Farmers filed an action against Christenson and his parents for $7,000 paid on the personal injury claim. The Christensons received proper service of the complaint and summons. The Christensons failed to answer or take any action to defend against this action. On April 1, 1982, Farmers filed a motion for default judgment and on July 29, 1982, the court granted said motion.

On January 11, 1983, the Christensons filed a motion

to vacate the default judgment and stay the execution. They asserted the judgment was void because Farmers was an improper party in the action. The Hinckleys lacked the ability to assign their personal injury action via the subrogation clause to Farmers. Following a hearing on their case, the court found that the subrogation occurred properly and that the default judgment was entered properly.

Appellants raise two issues on appeal:

(1) Can an insured party subrogate a personal injury action to an insurance company following the payment of claims arising out of a policy protection against uninsured motorist?

(2) Was the default judgment void if Farmers was an improper party to the action?

Appellants contend the District Court erred in determining that respondent received a valid subrogation interest from Kristine Hinckley. They contend that an injured party cannot subrogate a personal injury claim to an insurance company. Such subrogation is invalid. Therefore, the insurance company is not a real party in interest in the suit and cannot sue the tortfeasor.

Appellants rely heavily on Allstate v. Reitler (Mont. 1981), 628 P.2d 667, 38 St.Rep. 821, for the proposition that the insured cannot subrogate personal injury claims to an insurance company. Reitler involved a woman, Welton, who suffered an injury in an automobile accident caused by Reitler. Welton received $2,000 from Allstate for her medical expenses, but that amount failed to cover the total expenses.

She then settled with Reitler's insurance company

-3-

(Farmers Insurance Exchange) and signed a release of claims against them. Allstate then claimed a right to subrogation and tried to recover the $2,000 it paid to Welton from Reitler. This Court held that subrogation clauses on medical insurance policies are invalid, and went on to say the insured could not subrogate their personal injury claim to the insurance company.

Appellants also cite Cody v. Cogswell (1935), 100 Mont. 496, 50 P.2d 249, to support their claim that personal injury claims cannot be assigned. That case involved a writ of attachment on a personal injury cause of action before a judgment was rendered. This Court held that personal injury suits were not subject to writs of attachment.

Respondent distinguishes Reitler in that it involved medical payment coverage and not uninsured motorist coverage. It dismisses the broad statements against assignment of personal injury claims as dicta.

Justice Morrison, the author of Reitler, carefully limited the holding to medical payments subrogation clauses:

> "We hold that medical payment subrogation clauses are invalid. In doing so, we are mindful that this Court is joining a minority of jurisdictions so holding. However, the public policy considerations militate in favor of such a result." 628 P.2d at 670, 38 St.Rep. at 824.

This is not to say we approve of the wording of the clause in this contract which in our opinion could be abused by the insurance company. The clause reads:

> "Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's right of recovery therefore, against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall

-4-

> do nothing after loss to prejudice such rights." (Emphasis added.)

In our opinion under this clause it could be possible that the insurance company could collect an amount in excess of what was paid out to the insured. That will not be permitted. The insurance company can only be permitted to be subrogated for the amount paid out to insured.

Respondent asserts that equity dictates the need for subrogation. It cites Skauge v. Mountain States Tel. & Tel. (1977), 172 Mont. 521, 565 P.2d 628, to support this claim. In Skauge, this Court permitted subrogation of a claim for damages to personal property that resulted from defendant's negligence. We said subrogation may occur after the insured has been made whole for his entire loss.

Respondent argues that public policy requires subrogation in this case. If this Court precluded subrogation of claims against uninsured motorists, then the uninsured motorist would probably benefit. Once the insured plaintiff receives the insurance compensation for the accident, it is less likely he will pursue litigation against the uninsured motorist. Therefore, subrogation enhances the chances that the uninsured motorist will pay for his wrongdoing, and promote the policy requiring motorists to carry insurance.

As noted above, the controlling issue here is one of public policy. We hold that an uninsured motorist carrier can make payment to an insured, and when the insured settles his claim or obtains a judgment against a third party, the carrier can subrogate and collect back the amount paid to the insured. Further, the uninsured motorist carrier can require that the action be instituted in the name of the

-5-

insured against the uninsured motorist in order to effectuate the subrogation interest of the uninsured motorist carrier. But said action must not impair, diminish or jeopardize insured's ability to recover any damages in excess of the subrogation amount. If a subrogation occurs, then the uninsured motorist carrier must, in good faith, seek for the insured any other damages (general, special or punitive) that he may not have received in his payment from the carrier.

While it is argued that this issue hinges on this Court's interpretation of Reitler, where we denied subrogation to medical payment coverage, we believe that public policy demands that our holding in that case is limited to medical payment coverage.

Appellants' reliance on Cody, supra, also cited in Reitler for the proposition that Montana has long opposed assignment of personal injury claims, is unfounded. Cody never dealt with the issue of assignment. That case only involved an issue of attachment.

> "In their briefs and argument on this question, counsel for both sides have devoted considerable time and space to the question of whether such a cause of action is assignable, or whether it survives the death of the person in whom it reposes. As we view the case, these matters have no relevancy to the real issue presented here. The only question to be determined is whether a cause of action for personal injuries is subject to attachment before judgment is rendered thereon." 100 Mont. at 500, 50 P.2d at 250.

In the second issue, appellants claim that because subrogation cannot occur, then respondent cannot be a real party in interest. They cite Rule 17(a), M.R.Civ.P., that "[e]very action shall be prosecuted in the name of the real

party in interest . . . " The lack of a real party in interest renders the judgment void. A void judgment is always subject to collateral attack as provided in Rule 60(b)(4), M.R.Civ.P.

Due to the fact we find the subrogation is proper, we will not treat the second issue due to mootness.

The District Court properly found such judgment valid. We hereby affirm.

_____
Justice

We concur:

_____
Chief Justice


_____


_____


_____
Justices


Mr. Justice Daniel J. Shea will file a separate opinion later.

-7-

Mr. Justice Frank B. Morrison, Jr., specially concurring:

I concur in the result but for a different reason.

This action was initiated by Farmers Insurance Exchange filing a complaint against Mark Allen Christenson, Roland J. Christenson and Karense M. Christenson seeking to recover damages in the sum of $7,000. The record reflects that proper service was had upon defendants and they failed to appear. A default judgment was entered on July 29, 1982. Defendant's motion to vacate judgment was not filed until January 11, 1983, some 166 days later. Defendants acknowledge that the default judgment cannot be set aside upon any grounds other than that the judgment is void.

Christensons argue that the damages sought by Farmers Insurance Exchange resulted from an unlawful assignment of a personal injury claim belonging to Farmers assignor. This argument was urged in the District Court and the District Court ruled against Christensons. The District Court based its ruling on the merits of the legal argument. The District Court held that Farmers' claim rested on a valid subrogation interest.

The District Court should not have reached the merits. There simply is no basis for arguing that the judgment entered July 29, 1982 was void. The District Court clearly had jurisdiction of both the subject matter of the action and of the parties personally. When a court has jurisdiction then a judgment can only be collaterally attacked if the court's action involves a "plain usurpation of power." 7 Moore's Federal Practice, §60.25[2].

Here it is clear that the judgment of the District Court cannot be collaterally attacked. Christenson's motion to set aside the default judgment is not timely. This Court cannot reach the merits involving validity of Farmers' subrogation interests.

I vote to affirm.

Justice

-8-

Mr. Justice Fred J. Weber specially concurs as follows:

I concur in the result reached in the majority opinion for the reasons set forth in the foregoing special concurrence of Justice Morrison. I therefore vote to affirm.

Justice

8A

Mr. Justice John C. Sheehy, dissenting:

I dissent.

The ancients tell us that Aeneas descended with the Sibyl to the melancholy regions of the dead. He was shown, near the river of oblivion, a place of torment for one who perverts the law, making it say one thing today and another tomorrow.

I am not implying that by this decision the members of the majority will go to Hades. That is not in my jurisdiction. I am implying that the members of the majority should look over their shoulders to the past and their earlier pronouncements.

On May 28, 1981, we stated it was invalid in Montana to assign a personal injury claim against a tortfeasor to a subrogee. Today, in 1984, we permit such assignment.

The Court today is approving the assignment, in the name of subrogation, of a personal injury claim so the insurer can sue as the real party in interest. No statute supports the Court's action.

The facts of the case must first be understood. On June 6, 1981, Mark Allen Christenson, 17 years old, was operating a 1968 Ford motor vehicle owned by Eric T. Christenson. Mark's passenger in the automobile was Kristine N. Hinckley, a minor at the time. The automobile overturned on a county road in Yellowstone County and Kristine suffered personal injuries.

Mark Allen Christenson, the driver, was the minor son of Roland J. and Karense M. Christenson. Mark's parents, in compliance with Montana law, had agreed to assume Mark's liability so that he could get a driver's license. These parents undoubtedly did not realize, and I am sure that most

parents do not realize, that in Montana, when they assume full liability for the issuance of a driver's license to a minor person, they are on the legal hook for absolute liability without limit if the minor person is driving an uninsured vehicle which injures someone, or if their own policy of liability insurance does not follow the minor when he drives a non-owned automobile.

In this case, the minor was driving an automobile owned by Erick T. Christenson, a brother, and not owned by his parents. It is quite possible (we have no record on this point) that the parents here had a policy of liability insurance, which would follow Mark and provide him coverage, unless the automobile Mark was driving was owned by a member of the same household, but was not insured under the parents' policy. In that situation, the parents' policy of insurance coverage does not follow the minor driver.

Because of this unfortunate situation, the net result to the parents of Mark Allen Christenson is that they will probably be called upon to pay the judgment required now by the majority of this Court. While the parents were always at risk to Kristine, if she were injured through Mark's driving an uninsured vehicle, the parents were never at risk to her insurer until the majority opinion of this Court.

At the time of the collision, Kristine N. Hinckley was insured by Farmers Insurance Exchange, probably through a policy of automobile liability insurance owned by her parents, Dan K. and Rae D. Hinckley. The policy of insurance owned by the Hinckleys with the Farmers Insurance Exchange provided uninsured motorists coverage as is required in Montana. Farmers Insurance Exchange, without suit, entered into a settlement agreement with the parents of Kristine

Hinkley for the sum of $7,000. It should be remembered that when an automobile accident occurs to which an uninsured motorist coverage applies, the insurance company becomes an adversary of its own insured, taking the part of the uninsured motorist as against its insured in negotating a settlement.

On February 10, 1982, Dan K. Hinckley, as the father and conservator of the estate of Kristine and Rae D. Hinckley as her mother, entered into a release agreement with Farmers Insurance Exchange for the sum of $7,000, which release contains the following language.

> "NOW THEREFORE the undersigned, individually, as father of Kristine Hinkley and as conservator of the estate of Kristine N. Hinkley, protected person, in consideration of the payment of Seven Thousand Dollars ($7,000.00) received by him, does hereby forever release and discharge Farmers Insurance Exchange and Farmers Insurance Group, its agents, and employees, of and from any and all claims and causes of actions of every kind and character arising out of the injuries to Kristine Hinkley on or about June 6, 1981. The parties expressly agree, in the event that Kristine Hinkley or Dan K. Hinckley, as her guardian, successfully pursue any claim against the driver of the automobile, Mark Allen Christenson, Farmers Insurance Exchange shall become subrogated to and entitled to indemnity for the payment made, namely Seven Thousand Dollars ($7,000.00)."

Note please that the language in the release instrument does not constitute a transfer of the cause of action, but instead is a conditional provision for indemnity in the event that either Kristine or her guardian presses a claim against the uninsured motorist. No mention is made in the release of a suit by the insurance company, acting for itself, against the parents of Mark Allen Christenson.

This is not the first release that the Hinckley's signed for Farmers Insurance Exchange, but I will discuss that later in this dissenting opinion.

11

Farmers Insurance Exchange, instead of following the language of its release, above, and allowing Kristine Hinkley or her guardian to pursue the personal injury claim against Mark and his parents, chose instead to file its action in its own name directly in the District Court for the $7,000 it paid on Kristine's claim. It took a default judgment. Some nine months after the default judgment was entered, the financial responsibility division of the Montana Highway Patrol suspended the driver's license of the father of Mark Christenson. It was this unlooked-for incident that triggered the motion of the parents of Mark to set aside the default judgment obtained against them in favor of Farmers Insurance Exchange on the ground that the assignment of a personal injury claim is invalid in Montana.

The assignment of a personal injury claim based on tort in Montana is indeed invalid, or was until now. That a personal injury claim could not be assigned was established in Caledonia Insurance Co. v. Northern Pacific Railroad Co. (1905), 32 Mont. 46, 79 P. 544. There Judge Holloway noted the distinction that a right of action growing out of a violation of property rights was assignable, but a right of action growing out of the violation of a purely personal right was not. As recently as May 28, 1981, this was the law in Montana. This Court affirmed that position in All-State Insurance Co. v. Reitler and Farmers Insurance Exchange (Mont. 1981), 628 P.2d 667, 670, 38 St.Rep. 821, 824-25 (authored by Morrison, J., and concurred in by Haswell, C. J., Harrison, Shea, and Weber, J.). In that case it is stated:

> "Montana has long opposed the assignment of personal injury claims (citing a case). Whether an insurance policy provides for subrogation [as in

this case] or provides that the carrier has a lien on the proceeds of an insured's third party recovery, that policy has the effect of assigning a part of the insured's right to recovery against a third party tortfeasor. We hold that such an assignment is invalid." (Material in brackets added.)

As I have pointed out above, the release agreement does not permit Farmers Insurance Exchange to sue in its own name against the tortfeasor, since the release agreement is one for indemnity between the insurance company and its insured. If Farmers Insurance Exchange has an independent right of subrogation at all it must come from its insurance policy isued to the Hinkleys which includes the following clause:

"Subrogation. In the event of any payment under this policy, this company shall be subrogated to all the insured's right of recovery therefor, against any person or organization, and the insured shall execute and deliver instruemtns and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

This is the clause on which Farmers Insurance Exchange claims the right to sue as the real party in interest against the tortfeasor for the insured's right of recovery, and against all persons or organizations from whom recovery might be obtained, including the parents of the uninsured driver. That constitutes a transfer of the personal injury claim of Kristine Hinkley. The clause appears in the general provisions of the insurance policy, and not on the insured motorist endorsement itself. I recognize that a general subrogation clause is necessary in an insurance policy because the company has a right of subrogation for property damage payments for which it might make. There is no quarrel in Montana about that. Applying the clause however to personal injury claims paid for under the endorsement was invalid at the time of the issuance of the policy because of

this Court's long standing position that personal injury claims could not be assigned or subrogated. It is this clause upon which Farmers Insurance Exchange right of action must stand or fall.

The majority members are injudicious in permitting Farmers' action here on at least the following grounds: (1) The Court has no statutory authority to permit it; (2) The Court fails to distinguish between subrogation proper and assignment; (3) Farmers' action is not a bar to further suits by the Hinckleys against the tortfeasor; and (4) The insurer's action is improper when the insured is not fully compensated; and (5) There will be no accompanying reduction in the premiums Montanans pay for uninsured motorist coverage.

(1) Lack of Statutory Authority

In the absence of statutory authority permitting subrogation of uninsured motorist coverage claims we should scruple to permit subrogation. Other states have adopted such permitting legislation. An analysis of cases rising in other states, under permissive statutes, reveals a number of incidental questions relating to subrogation that require legislation to solve. Waiting for legislative direction in the field would undoubtedly help close the avenues to some needless litigation in our state opened up by the majority.

In examining the statutes of other states within the Pacific Digest system, we find Arizona (Section 20.259.01 Ariz. Stat.), Colorado (Colo. Rev. Stat. §10-4-609), Hawaii (Section 431-448 HRS), and Utah (Section 41-12-21.1 UC) have provisions nearly the same as ours (Section 33-33-201, MCA). No hint of subrogation is found in those statutes.

- 14 -

The California legislature has adopted the following provision (Section 11 580.2(7)(g)):

> "Subrogation. The insurer paying a claim under an uninsured motorist indorsement or coverage, shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that the payment was made. . ."

Note that the California provision provides for subrogation not only against the uninsured motorist but against "any person causing such injury or death." This means that joint and several tortfeasors can be made to respond in subrogation to an insurer who has made a payment under the uninsured motorist coverage.

In California, however, the right of the subrogating insurer to collect from others in sublimated to the right of the injured party to be made whole. Thus, if the injured party is not fully compensated by the recovery of the limits of the uninsured motorist coverage, and has an action against other joint tortfeasors, the insurer making payment under the uninsured motorist coverage has no right of subrogation until the injured party has been made whole from the other tortfeasors. United Pacific-Reliance Insurance Companies v. Kelly (1983), 189 Cal.Rep. 323; Security National Insurance Co. v. Hand (1973), 107 Cal.Rep. 439. The majority opinion in this case ignores this restrictive provision protecting insureds.

In the case we are deciding here, the general grant of authority for subrogation by the majority of this Court to the insurer does not take into account the result as to joint tortfeasors. I submit the legislature should decide such issue.

Here is the other side of the joint tortfeasor coin: In Washington, section 48.22.040(3), R.C.W., provides:

"In the event of payment to an insured under the coverage required by this chapter and subject to the terms and conditions of such coverage, the insurer making such payments shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such insured against any person or organization legal responsible for the bodily injury for which such payment made,. . ."

In Hawaiian Insurance and Guaranty Company v. Mead (1975), 538 P.2d 865, 869, the Washington Appellate Court held that the statute provided subrogation only against the underlined motorist, the person causing the damage, and no right of recovery existed against other parties. The Washington decision recites that four states, Mississippi, Michigan, Missouri, and Georgia have held likewise. The majority in this case permit suit by the insurance company against the parents of the uninsured driver.

Subrogation is founded upon the equitable theory that one who pays the legal obligation of another should stand in the shoes of the payee to recover the payment from the one who should have made payment. That makes equitable sense. The five states which limit the right of recovery in subrogation against the uninsured motorist, and no others, recognize that the theory on which subrogation is founded should not be extended to grant a right of recovery against parties who have not participated in the condition of being uninsured. Again the majority has deficiently considered the implications of its majority decision in this case with respect to third parties, other than the uninsured motorist.

In section 743.795 ORS, the state of Oregon is careful to keep the right of action in the insured, not the company,

in the event of payment under an uninsured motorist coverage. Its statute sets out clauses to be included in the policy of motor vehicle insurance including 11(a) "the insurer shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any uninsured motorist . . ." Clause 11(b) provides that "such person shall hold in trust for the benefit of the insurer all rights of recovery which he may have against the uninsured person . . ." Clause 11(c) allows recovery to be made from joint tortfeasors. Clause 11(e) provides the insured shall bring action against the uninsured motorist or other parties if the insured is requested to do so by the insurer.

Clearly Oregon still observes the common law sanction against assignment of personal injury claims.

The statutes of Kansas (Kan.Stat.Ann. § 40-287), Idaho (Idaho Code § 41-2505), Washington (Wash.Rev.Code § 48-22-303), and Wyoming (Wyo.Stat. § 31-10-104) point to another interesting result. In those states where the statutes are nearly the same, it is provided that the insurer making a payment on the uninsured motorist coverage, "shall, to that extent, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery" against a responsible party. Each of those statutes goes on to provide that the insurer shall have a direct right of action only if the insurer is required to make an uninsured motorist payment by virtue of the insolvency of the motorist. It may be deduced from the terms of these statutes that the right to sue remains in the insured, subject to reimbursement of the insurer making payment after judgment or settlement, but a direct right of

action to the insurer is given where the responsible motorist is insolvent against his insolvent estate.

From the foregoing, it can be seen that the issue is not simply should the Court without statutory authority, allow subrogation of uninsured motorist coverage payments and direct action therefore by the insurer. The related problems are too complex to be answered by a court in a single case and the whole subject should be decided by the legislature.

(2)    The majority failed to distinguish between subrogation and assignment.

The gist of the issue in this case is whether Farmers can bring a direct action against the uninsured motorist and his guarantors. This Court noted in Allstate Insurance Co. v. Reitler, supra, that a subrogation which results in a transfer of the cause of action to the insurer, is in effect an assignment and not subrogation.

The distinction should be kept clearly in mind. There is, of course, no reason why Farmers should not be able to recover to the extent it made payment its settlement under the uninsured motorist coverage clause, if that recovery is made by the insureds. Certainly that is what the release which Farmers took from the Hinckleys contemplated. I would agree if the majority held that the subrogation clause on an automobile policy merely asserted a right to reimbursement, contribution or indemnity, but I cannot agree that the insurer became the owner of the cause of action. Idaho, in Rinehart v. Farm Bureau Mutual Insurance Co. (Idaho 1974), 524 P.2d 1343, was careful to note that distinction.

If Farmers according to its release was simply seeking to recover here to the extent of its payment from any judgments or settlement received in the name of the

Hinckleys, I would have no quarrel with its right to such recovery. When it insists on the right to sue directly, in its own name, as a real party in interest, its subrogation becomes an assignment. In Fifield Manor v. Finsten (Cal. 1960), 354 P.2d 1073, the California Supreme Court was careful to preserve the distinction and to refuse subrogation where no statutory authority for the assignment of the cause of action existed.

(3) <u>Farmers action against the uninsured motorist is not a bar to further action by the Hinckley's</u>.

An excellent reason for refusing at this juncture, in the absence of legislative action, to permit direct suit by insurers who have made payments under uninsured motorist coverage is that such direct suits do not bar further action by the injured parties against the same uninsured motorist or his guarantors. Thus, the cause of action is split, which goes against the grain of all jurisprudential sense and finality.

This case is an excellent illustration. Attached as an appendix is a copy of the release obtained by Farmers in this case. In the second "whereas" clause, it is noted that the policy issued to the Hinckleys included uninsured motorist and medical payments coverages. In view of those coverages, it is curious that the release also includes the following paragraph:

> "In this regard, the parties agree that the original release, dated September 16, 1981, was incorrect so far as the recitations therein concerning the insurance provisions under which the $7,000 payment was made. It is now expressly understood that the sum of $7,000 was paid pursuant to the uninsured motorist coverage."

The release goes on to say, however, that the $7,000 payment is full and final payment of <u>every kind of claim</u>

- 19 -

against Farmers Insurance Group by the Hinckleys, presumably including medical coverage payments.

Two possibilities exist with respect to the release: (1) payment was made exclusively under the uninsured motorist coverage, and no payment was made to the Hinckleys under the medical payment provision. In such case, Hinckleys have the right to recover medical expenses against the uninsured motorist or his guarantors. Thus, permitting Farmers to recover on the uninsured motorist coverage and the Hinckleys to recover on the medical payments expenses constitutes a splitting of the cause of action. (2) Or, the medical payments were subsumed by Farmers in the single payment of $7,000. In that event, Farmers is suing for medical benefits paid, under medical payments coverage, which, under our holding in Reitler, is invalid in Montana.

Of course, the statute of limitations may now have run as far as the Hinckley suit against the uninsured motorist is concerned, but at the time of the taking of the release here in question, only seven months had elapsed. Again, this Court should consider the rule in California, quoted above, that the insurer has no right of subrogation where an insured has not been fully compensated. I would hope that we would continue the rule adopted in Skauge v. Mountain States Tel. and Tel. Co. (Mont. 1977), 172 Mont. 521, 565 P.2d 628, 632, to the effect that when an insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any cost of recovery including attorneys fees before the insurer can assert its right of legal subrogation against the insured or the tortfeasors.

(4) Action by the insurer would be improper where the insured is not fully compensated.

We have cited the California cases above, and _Skauge_, our case, indicating that subrogation is not available to an insurer unless the insured is fully compensated. When, as in this case, a right is granted to an insured to bring direct action, there will be a race to the courthouse between the insurer and the insured to achieve a first recovery. That is the inevitable result of splitting a cause of action.

It should be a matter of embarrassment to this Court, and to the law firm involved, that the arguments made in this case, and the stance adopted by this Court, are exactly opposite to the arguments and stances adopted in _Reitler_, supra. In _Reitler_, the same law firm then representing Farmers Insurance Exchange filed a brief in this case in which it urged upon this Court that we had expressly recognized the rule that causes of action against personal injury are not assignable. It cited in support of that proposition Coty v. Cogswell (1935), 100 Mont. 496, 50 P.2d 249; Toole v. Paumie Persian Dye House (1935), 101 Mont. 74, 52 P.2d 162; Baker v. Tullock (1935), 106 Mont. 375, 77 P.2d 1035; Caledonia Insurance Co. v. Northern Pac. Ry. Co. (1905), 32 Mont. 46, 79 P. 544; and 40 A.L.R.2d 480, relating to assignability of claims for personal injury, and the Restatement (Second) of Contracts § 547.

Now, three years later, the same law firm and the same insurance company take an opposite stance, and in the name of public policy, ask this Court to reverse without statutory authority our longstanding position with respect to the non-assignability of personal injury claims. Farmers argued and the majority swallowed, that public policy in providing

- 21 -

insurance on all motor vehicles in the state is enhanced by allowing insurers to bring direct actions against uninsured motorists! It should be evident to all of us that Farmers is not going to sue uninsured motorists who are judgment-proof. It is only because in this case the parents signed a liability form for Mark that suit had been brought in this case. Insurance companies are not eleemosynary institutions. There are no more apt to chase good money after bad than any other party.

(5) There will be no accompanying reduction in premiums Montanans pay for uninsured motorist coverage.

The right of subrogation granted by the majority in this case is complete gravy to the insurance company. Subrogation is not a factor used by insurance companies in determining the rate of premiums charged. Arizona took note of this fact in refusing to make any distinction between assignment and subrogation with respect to the right of the insurer to recover. It held in Allstate Insurance Co. v. Durke (Ariz. 1978), 576 P.2d 489, 492:

> "Also, to require an injured policy holder to return to his insurer the benefits for which he has paid premiums is to deny him the benefits of his thrift and foresight. In terms of public policy the only justification for allowing an insurance company to recoup the benefits it contracted to pay out in exchange for the receipt of premium payments which are presumably actuarially adequate would be the lowering of premium rates as the result of such a recoupment. This is generally not the case:
>
> "'Subrogation is a windfall to the insurer, it plays no part in the rate schedules (or only a minor one), and no reduction is made in insuring interest . . . where the subrogation right will obviously be worth something.' Patterson, Essentials of Insurance Law at 151-152 (2d ed. 1957) (citing authority)." 576 P.2d at 592.

Thus, although the majority has opened up to insurance companies a right of subrogation to sue in its own name

wherever it might make recovery, not only against uninsureds, but against other parties, no accompanying benefit will accrue in the form of reduced premiums to be paid by Montanans for their uninsured motorist coverage. The insurers will collect the same amount of money from us for that coverage whether or not we permit subrogation.

Insurers can rejoice in that. Subrogation is not factored in by insurers when they set the premiums for uninsured motorist coverages. The loss cost is spread among the policy holders without regard to subrogation. Montanans won't see a drop in uninsured motorist coverage premiums because of this decision. They will see a proliferation of lawsuits by insurers "enforcing public policy" as the majority believes, to collect that gravy.

The term "law" can be defined as that group of principles and precedents which, it may be fairly predicted, a court will apply to a given set of facts. Predicability is of the essence. A court which swings unpredictably from one end of the spectrum to the other, not pausing at any shades between, is not applying law. It is acting as no more than an ad hoc committee.

I would reverse and dismiss.

_____
Justice

- 23 -

# R E L E A S E

WHEREAS, on June 6, 1981, Kristine Hinckley received injuries when the automobile in which she was riding as a passenger, which automobile was operated by Mark Allan Christenson, on County Road L745 near the junction with Fly Creek Road went out of control, left the road, and overturned. Said automobile driven by Mark Allan Christenson was uninsured; and

WHEREAS, the undersigned Dan K. Hinckley holds a policy of insurance issued by Farmers Insurance Exchange which includes uninsured motorist coverage and a medical payment provision; and

WHEREAS, the undersigned Dan K. Hinckley was appointed conservator of the estate of Kristine Hinckley, and in his individual capacity as father and as conservator of the estate of Kristine Hinckley, his minor daughter, has now agreed upon a full and final settlement with Farmers Insurance Exchange and Farmers Insurance Group;

NOW, THEREFORE, the undersigned, individually, as father of Kristine Hinckley, and as conservator of the estate of Kristine Hinckley, protected person, in consideration of the payment of Seven Thousand and no/100 Dollars ($7,000.00), received by him, does hereby forever release and discharge Farmers Insurance Exchange and Farmers Insurance Group, its agents, and employees, of and from any and all claims and causes of action of every kind and character arising out of the injuries to Kristine Hinckley on or about June 6, 1981. The parties expressly agree, in the event that Kristine Hinckley or Dan K. Hinckley, as her guardian, successfully pursue any claim against the driver of the automobile, Mark Allan Christenson, Farmers Insurance Exchange shall become subrogated to and entitled to indemnity for the payment made, namely $7,000.00.

In this regard, the parties agree that the original release, dated September 16, 1981, was incorrect so far as the recitations therein concerning the insurance provisions under which the $7,000 payment was made. It is now expressly understood that the sum of $7,000 was paid pursuant to the uninsured motorist coverage.

It is the intent hereof that all claims of every kind and character against Farmers Insurance Group and Farmers Insurance Exchange be hereby fully and finally compromised and settled.

This release is given pursuant to an order of the District Court of the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone.

Dated this 10 day of February, 1982.

_____
Dan K. Hinckley, individually as father, and as conservator of the estate of Kristine Hinckley, protected person.

**PLAINTIFF'S EXHIBIT "B"**

_____
Rae D. Johnson Hinckley, mother of Kristine Hinckley, protected person

Appendix to Sheehy's dissenting opinion.

- 24 -

CONCURRENCE OF MR. JUSTICE DANIEL J. SHEA

No. 83-177

FARMERS INSURANCE EXCHANGE,

vs.

MARK ALLEN CHRISTENSON, ROLAND
J. CHRISTENSON and KARENSE M.
CHRISTENSON.

Dated:    January 6, 1985

FILED

JAN 6 - 1985

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, specially concurring:

I agree with the special concurrence of Mr. Justice Morrison and would decide this appeal without reaching the substantive issues presented. The first trial court, having acquired proper subject matter jurisdiction over this controversy and personal jurisdiction over the parties, entered a valid default judgment against the defendants. This default judgment was binding, and could not be attacked directly. Upon the defendant's motion to vacate the default judgment, the second trial court incorrectly decided the case on the merits of the subrogation claim, and this Court improperly affirmed that decision.

If it would have been proper for the trial court and this Court to reach the subrogation issue, I would then join in the dissent of Mr. Justice Sheehy and agree with the arguments expressed therein. In particular, in order for the insurance company to properly sue in its own name as the real party in interest, it must have received a valid assignment of Kristine Hinckley's personal injury cause of action. In All-State Insurance Co. v. Reitler and Farmers Insurance Exchange (Mont. 1981), 628 P.2d 667, 38 St.Rep. 821, this Court held that assignment of personal injury claims was invalid. Further, it held that such an assignment was invalid even when it takes the form of subrogation or indemnification. This is not to say that an insurance company cannot truely subrogate or indemnify itself to a valid claim of its insured, but it must do so in the name of the insured and maintain the insured as the real party in interest.

If this case could properly be decided on the merits of the subrogation claim, I would reverse the trial court's decision and dismiss.

_Daniel J. Shea_
Justice